UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIAN VAL KELLEY      ]
    Petitioner,      ]
                     ]
v.                    ]    No. 3:06-0162
                      ]    Judge Trauger/Bryant
VIRGINIA LEWIS, WARDEN ]
    Respondent.       ]

To: Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

By an order (Docket Entry No.11) entered June 23, 2006, the Court referred this action to the Magistrate Judge "for case management, decision on all pretrial, nondispositive motions and report and recommendation on all dispositive motions under 28 U.S.C. § 636(b)(1)(A) and (B) and to conduct any necessary proceedings under Rule 72(b), Fed. R. Civ. P."[1]

Presently pending before the Court are the Petition for Writ of Habeas Corpus (Docket Entry No.1) and the respondent's Answer (Docket Entry No.10) to the Petition. The undersigned has reviewed these pleadings and the record in this case and has, for the reasons stated below, found that the Petition for Writ of Habeas Corpus lacks merit. Accordingly, it is respectfully recommended that the Petition be denied and that this action should be dismissed.

---

[1] This case was originally referred to Magistrate Judge E. Clifton Knowles. However, by an order (Docket Entry No. 12) entered August 10, 2006, it was administratively transferred to the undersigned.

1

## I. BACKGROUND

The petitioner is an inmate at the Southeastern Tennessee State Regional Correctional Facility in Pikeville, Tennessee. Through counsel, he brings this action pursuant to 28 U.S.C. § 2254 against Virginia Lewis, Warden of the facility, seeking a writ of habeas corpus.

On September 8, 2000, a jury in Wilson County found the petitioner guilty of first degree premeditated murder and felony murder.[2] Because the convictions arose from a single instance of homicide, Tennessee law provided that the crimes would be merged into a single conviction. *See* Carter v. State, 958 S.W.2d 620, 624-625, n. 6 (Tenn. 1997). For his crime, the petitioner was given a sentence of life imprisonment. Docket Entry No. 8; Addendum No. 1 at pgs. 77-78.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the conviction. Docket Entry No. 8; Addendum No. 8. The Tennessee Supreme Court later denied petitioner's Rule 11 application for additional review. Docket Entry No. 8; Addendum No. 11.

In October, 2003, the petitioner filed a petition for state post-conviction relief in the Criminal Court of Wilson County. Docket Entry No. 8; Addendum No. 12A at pgs. 1-11. Following an evidentiary hearing, the trial court denied the petition. Docket Entry No. 8; Addenda Nos. 12C at pg. 410 and No. 13 at pgs. 125-130. On appeal, the denial of post-conviction relief was affirmed by the Tennessee Court of Criminal Appeals. Docket Entry No. 8; Addendum No. 18. Once again, the Tennessee Supreme Court rejected the petitioner's Rule 11 request for further review. Docket Entry No. 8; Addendum No. 21.

---

[2] The petitioner admitted to killing his 13 month old daughter, Erin Elaine Kelley, because God told him that a sacrifice would be needed prior to the second coming of Jesus Christ. The underlying offense supporting the felony murder conviction was aggravated child abuse.

## II. PROCEDURAL HISTORY

On March 1, 2006, the petitioner filed the instant petition (Docket Entry No. 1) for federal habeas corpus relief. The petition sets forth thirteen (13) claims for relief. These claims include :

- A) The jury was given an instruction regarding the "wrongfulness" of the petitioner's conduct. This instruction was inadequate because
    - the statutory definition of "wrongfulness" was too restrictive and should have included "moral" as well as "legal" wrongfulness (Claim No. 1);
    - the trial judge neglected to define the term "wrongfulness" for the jury (Claim No. 2);
    - a proper definition of the concept of "wrongfulness" was not given to the jury (Claim No. 3);

- B) The evidence was not sufficient to overcome the petitioner's showing of insanity (Claim No. 4);

- C) The conviction was violative of the Constitution because the petitioner "was suffering from a severe mental illness and truly believed that a Devine power had authorized his actions and that his actions were morally justified but still criminally wrong." (Claim No. 5);

- D) Prosecutorial misconduct occurred when the prosecutor said to the jury "Guess who defines 'wrong'; <u>you</u> get to define 'wrong'." (Claim No. 6);

- E) The petitioner was denied the effective assistance of counsel because his attorney[3]
    - failed to object to the prosecutor's improper argument (Claim No. 7);
    - failed to seek a special jury instruction defining the term "wrongfulness" (Claim No. 8);
    - waived the question of defining "wrongfulness" by agreeing with the court that the jury instruction

---

[3] At trial, the petitioner was represented by Gary Vandever, a member of the Wilson County Bar.

3

       was acceptable as is (Claim No. 9);
      - neglected to challenge the constitutionality of
       the insanity affirmative defense statute as
       applied to the petitioner (Claim No. 13); and

  F)  The insanity affirmative defense statute (T.C.A. § 39-11-501),
    as applied to the petitioner, is unconstitutional because
      - since its enactment in 1995, no defendant
       contesting the charges against him has ever used
       it successfully to avoid conviction (Claim No. 10);
      - the petitioner was suffering from a severe mental
       disease or defect that prevented him from
       appreciating the nature or wrongfulness of his
       actions (Claim No. 11);
      - the statute impermissibly shifts the burden of proof
       with respect to the issue of *mens rea* from the
       prosecution to the defendant (Claim No. 12).

  Upon its receipt, the Court conducted a preliminary review of the petition and determined that the petitioner had stated a colorable claim for relief. Accordingly, an order (Docket Entry No. 2) was entered directing the respondent to file an answer, plead or otherwise respond to the petition. Rule 4, Rules - - § 2254 Cases.

  Presently before the Court are the Petition for Writ of Habeas Corpus and respondent's Answer (Docket Entry No. 10) to the Petition. Having carefully considered these pleadings and the entire record, it appears that an evidentiary hearing is not needed in this matter. Rule 8(a), Rules - - - § 2254 cases; *see also* Smith v. United States of America, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief).

### III. ANALYSIS OF THE CLAIMS

  A petition for writ of habeas corpus will not be considered unless the petitioner has first exhausted all available state court remedies for each claim in his petition. Cohen v. Tate,

4

779 F.2d 1181, 1184 (6th Cir.1985). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine that promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Granberry v. Greer, 481 U.S. 129, 107 S.Ct. 1671, 1674-1675, 95 L.Ed.2d 119 (1987). Thus, as a condition precedent to seeking federal habeas corpus relief, each of the petitioner's claims must have been fairly presented to the state courts. Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982). Once the federal claims have been presented to the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider them. Manning v. Alexander, 912 F.2d 878, 883 (6th Cir.1990).[4]

The petitioner's claims were fully exhausted in the state courts on either direct appeal or during the course of his post-conviction proceedings.[5] When a federal habeas corpus claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir.1999).

---

[4] In Tennessee, a habeas petitioner need take his claims no farther than the Tennessee Court of Criminal Appeals to satisfy the exhaustion requirement. Rule 39, Rules of the Tennessee Supreme Court; *see also* Adams v. Holland, 324 F.3d 838 (6th Cir. 2003).

[5] The petitioner's prosecutorial misconduct claim (Claim No. 6) was first raised during the post-conviction proceedings, Docket Entry No. 8; Addendum No. 15A at pg. 6, and was apparently overlooked by the state courts. *See* Docket Entry No. 8; Addendum No. 18. Finding no reason to penalize the petitioner for the failure of the state courts to address this claim, the prosecutorial misconduct claim is deemed to have been exhausted in the state courts. In addition, the Tennessee Court of Criminal Appeals found that the petitioner had waived his unconstitutional statute claims (Claim Nos. 10-12) for failing to raise them on direct appeal. Docket Entry No. 8; Addendum No. 18 at pg. 9. Nevertheless, that court addressed the merits of those claims and they are now considered to also be exhausted.

5

In order for a state court adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). In order to obtain the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. Id. In short, state court judgments must be upheld unless, after the closest examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. Id., at 120 S.Ct. 1511.

**A) The "Wrongfulness" Instruction**

The petitioner chose to employ an insanity defense at trial. Accordingly, the jury was instructed on the insanity affirmative defense statute (T.C.A. § 39-11-501) as follows :

> The defendant has raised the defense that he was
> insane at the time of the commission of the offense.
> A person is not responsible for criminal conduct if
> at the time of the commission of the acts constituting
> the offense, the person as a result of a severe mental
> disease or defect was unable to appreciate the *wrongfulness*
> of such person's acts. A mental disease or defect by
> itself is not a defense ...... For you to return a verdict
> of not guilty by reason of insanity the defendant must
> prove both of the following things by clear and convincing
> evidence : Number one, that he had a severe mental
> disease or defect at the time that the acts constituting
> the crime were committed. Number two, that as a result
> of the severe mental disease or defect he was not able to
> understand what he was doing or to understand what he
> was doing was wrong.(emphasis added)

Docket Entry No. 8; Addendum No. 8 at pgs. 18-19.

The petitioner has asserted three claims in which he believes that it was error not to include a "moral" component to the jury instruction defining the "wrongfulness" of petitioner's conduct (Claim Nos. 1-3).

In order for a jury instruction to provide a basis for habeas corpus relief, the instruction at issue must be more than merely undesirable, erroneous or universally condemned. The instruction, when taken as a whole, must be so infirm as to render the entire trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). If an instruction is ambiguous and not necessarily erroneous, a federal habeas corpus claim will arise only if there is a reasonable likelihood that the jury applied the challenged instruction in a way that offended the Constitution. Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).

Prior to the conclusion of the trial, a question arose as to whether the jury should be given a special instruction defining the term "wrongfulness". After some deliberation, the judge felt that a special instruction was unnecessary because the term had a commonly understood meaning. Defense counsel agreed and stated for the record that the instruction to be given to the jury was acceptable without further definition. Docket Entry No. 8; Addendum No. 15B at pg. 49. As a consequence, there was no contemporaneous objection to the instruction given to the jury.

During the exhaustion of these issues, the state courts noted that a criminal defendant is entitled to a complete and correct instruction of the law. Here, it was found that the jury had received such an instruction. The petitioner has not shown that the instruction to the jury was an incorrect statement of the law. Nor has he shown how the refusal to provide a special instruction

7

defining "wrongfulness" affected his right to a fundamentally fair trial. Therefore, these claims have no merit and will not support an award of habeas corpus relief.

**B) Sufficiency of the Evidence**

The petitioner has put forth two claims alleging that the evidence was insufficient to overcome his showing of insanity (Claim Nos. 4 and 5). The right to due process guaranteed by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). When weighing the sufficiency of the evidence to sustain a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. Id., at 99 S.Ct. 2789.

The identity of Erin's murderer was never at issue. At least four witnesses testified that the petitioner admitted to smothering the infant.[6] By raising an insanity defense, the petitioner conceded that the killing was premeditated and intentional. Expert witnesses did provide compelling evidence that the petitioner was mentally ill at the time of the killing. However, these witnesses for the most part were unable to confirm that the petitioner did not understand the wrongfulness of his conduct during the commission of the crime. In fact, the record reflects several instances in which the petitioner told people that he knew what he was doing was wrong and could be punished for it later. Consequently, there was more than sufficient evidence from which a jury could find that the petitioner was not legally insane at the time he murdered his

---

[6] These witnesses include Lori Kelley, the petitioner's wife; Officer Mike Wentzell; Detectives Scott Osborn and James Burton.

8

daughter.

**C) Prosecutorial Misconduct**

Prosecutorial misconduct will provide a basis for habeas corpus relief only when the actions of a prosecutor are so egregious as to deny the petitioner a fundamentally fair trial. Hamblin v. Mitchell, 354 F.3d 482, 494 (6th Cir. 2003), cert. denied, 125 S.Ct. 344 (2004). The petitioner alleges that the prosecutor went too far when he told the jury "Guess who defines 'wrong'; you get to define 'wrong'." (Claim No. 6).

The petitioner has offered no convincing explanation as to why the prosecutor's statement to the jury should be considered improper. Nevertheless, even if the statement was in some way improper, this single isolated incident can hardly be construed as an act that denied the petitioner a fundamentally fair trial. The statement was neither inflammatory nor did it belittle the petitioner in any manner. This claim, therefore, has no merit.

**D) Ineffective Assistance of Counsel**

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. To establish a violation of this right, the petitioner bears the burden of showing that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the alleged deficiency. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Mallett v. United States, 334 F.3d 491, 497 (6th Cir.2003).

The petitioner asserts four instances in which he was allegedly denied the effective assistance of counsel (Claim Nos. 7-9 and 13). Three of the four instances involve the question

9

of whether the jury should have been more fully instructed on the definition of "wrongfulness" (Claim Nos. 7-9). With respect to this question, a panel of the Tennessee Court of Criminal Appeals made the following observation :

> In our view, counsel's trial strategy was sound. Absent any established definition of wrongfulness, counsel relied on the defense experts to provide explanations regarding the various definitions of wrongfulness and to opine as to why the petitioner met the standards of the insanity defense. All of counsel's actions indicate that he strategically placed the issue of wrongfulness before the jury, making them mindful of the definitions of wrongfulness that would be beneficial to the petitioner's case.
>
> Ultimately, however, the jury determined that the petitioner was able to appreciate the wrongfulness of his actions, as was its prerogative. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation if counsel's choices are informed and based upon adequate preparation. [citations omitted]. In the present case, the record reflects counsel's diligence in all facets of the trial and demonstrates that he represented the petitioner to the best of his abilities, working within the parameters of the insanity law as it existed at the time of the trial. Therefore, we agree with the post-conviction court that the petitioner was not ineffective in this regard.

Docket Entry No. 8; Addendum No. 18 at pg. 8.

The state courts determined that a special jury instruction defining the term "wrongfulness" was not necessary to ensure the petitioner a full and correct charge of the law. Thus, applying the standard set forth in <u>Strickland</u>, supra, they concluded that defense counsel had not been ineffective for failing to seek and obtain such an instruction. This conclusion was neither contrary to nor an unreasonable application of federal law. Therefore, petitioner's ineffective assistance claims related to a special jury instruction are meritless.

The final ineffective assistance claim (Claim No. 13) questions the failure of counsel to

challenge the constitutionality of the insanity affirmative defense statute as applied to the petitioner. Prior to the petitioner's trial, the state courts had ruled that the post-1995 version of the insanity affirmative defense statute, which is closely patterned after the federal insanity defense statute, was constitutional. State v. Perry, 13 S.W.3d 724 (Tenn. Crim. App. 1999); State v. Holder, 15 S.W.3d 905 (Tenn. Crim. App. 1999). On that basis, it was determined that defense counsel had not been deficient for neglecting to attack a statute that had already been deemed constitutional. Docket Entry No. 8; Addendum No. 18 at pg. 9.

During the post-conviction evidentiary hearing, counsel for the petitioner made the following observation :

> Mr. Raybin : Yes, Your Honor. Just very briefly, on the question of ineffective assistance, I had to raise that at this point, but I think I've proved that the state of the law at the time was that no one anticipated that Flake would be decided, but that commends that I raise the issue, but I think the reality of it, as the General points out, without waiving any of those claims, Mr. Vandever clearly did everything any lawyer in the world could have done, and even today, there's not a single witness that I could produce that he didn't put on.
>
> So although I have alleged ineffective assistance of counsel, the reality of it is, he did everything he could. He put on every witness that could possibly know anything about it, and notwithstanding that, the man was still convicted. So the fault lies clearly not with the lawyer, but with the state of the law, and I suggest that that gets us right back to the fundamental question that the case at this trial dealt with wrongfulness and that this post-conviction case deals with that very same issue, so that's what has to be resolved. Thank you, and I thank you, General, for your comments.

Docket Entry No. 8; Addendum No. 13 at pg. 124.

While post-conviction counsel specifically preserved his ineffective assistance claims for review, he did acknowledge that the petitioner's lawyer had done everything reasonably expected of him during the course of representing the petitioner. Petitioner's ineffective assistance claims, therefore, have no merit.

**E) Constitutionality of the Insanity Affirmative Defense Statute (T.C.A. § 39-11-501)**

The petitioner's remaining claims (Claim Nos. 10-12) attack the constitutionality of the insanity affirmative defense statute as applied to him. These claims are premised upon the belief that no criminal defendant had previously been successful using the defense to avoid conviction and that the statute impermissibly shifted the burden from the prosecution to the petitioner to show that he lacked the requisite mens rea to commit the crime.

On appeal from post-conviction, the Tennessee Court of Criminal Appeals analyzed these issues in light of federal case law and found that the insanity affirmative defense statute had not been unconstitutionally applied in the petitioner's case. Docket Entry No. 8; Addendum No. 18 at pgs. 9-10. In reaching this conclusion, the state courts did not act contrary to federal law. Nor did the state courts apply federal law in an unreasonable manner. Consequently, the petitioner's claims attacking the constitutionality of the insanity affirmative defense statute will not support an award of habeas corpus relief.

**RECOMMENDATION**

For the reasons discussed above, the undersigned respectfully RECOMMENDS that the Court DENY the Petition for Writ of Habeas Corpus and DISMISS this action.

Any objections to this Report and Recommendation must be filed with the Clerk of Court

12

Case 3:06-cv-00162   Document 13   Filed 09/13/06   Page 12 of 13 PageID #: 65

within ten (10) days of receipt of this notice and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

s/ John S. Bryant

John S. Bryant
United States Magistrate Judge